**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

| | | |
|---|---|---|
| Joe L. Adams, Jr., | ) | Civil Action No.: 0:19-cv-00663-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| 3D Systems, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

Plaintiff Joe L. Adams, Jr. filed this action pro se against his former employer, Defendant 3D Systems, Inc., alleging claims of discrimination, harassment, and retaliation based on his race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634; and state-law claims for assault, negligent supervision, and wrongful termination. (ECF No. 1.)

This matter is before the court on the parties' cross-Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 189, 192.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) (D.S.C.), these matters were referred to a United States Magistrate Judge for pretrial handling. On June 24, 2021, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. (ECF No. 240 at 1.) Plaintiff filed Objections to the Report and Recommendation, which are presently before the court. (ECF No. 246.) For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's recommendation, **GRANTS** Defendant's Motion for Summary Judgment, **OVERRULES** Plaintiff's objections, and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

The facts of this matter are discussed in the Report and Recommendation.  (*See* ECF No. 240 at 1–14.)  The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference.  The court will only reference herein facts that are pertinent to the analysis of the parties' dispute.

Defendant purports to be "a leading, global provider of content-to-print solutions including personal, professional and production 3D printers, integrated print materials and on-demand custom parts services for professionals and consumers . . . creative content development, 3D CAD software, curation services and content downloads."  (ECF No. 189-2 at 2 ¶ 3.)  According to Defendant, "3D printing is a process whereby three-dimensional solid objects of any shape are created through a process called additive manufacturing."  (ECF No. 189-3 at 2 ¶ 3.)  Defendant "has a Plastics business unit that contains both a Product Development Division and a Process Development Division."  (*Id.*)  "The Product Development Division focuses on the electrical and mechanical designs of 3D Systems' printers, whereas the Process Development Division focuses on the actual materials selected for use in the printing process." (*Id.*)  Defendant's Product Development Division includes both Stereolithography ("SLA") and Laser Sintering ("SLS") Development Departments, which specialize in the additive manufacturing processes used in three-dimensional printing.  (*Id.*)

Plaintiff started his employment with Defendant as a production repair technician on December 5, 2012.  (*Id.* at 3 ¶ 4.)  Thereafter, he became a technical support engineer on December 16, 2013.  (*Id.*)  On March 11, 2016, Defendant transferred Plaintiff into an engineering/electrical technician position in the Product Development Division, which required him to "perform[] repairs on 3D printers by conducting electrical work, calibrating lab equipment, and doing other machine

maintenance." (*Id.* ⁋ 5.)

In September 2017, Defendant transferred Plaintiff to the SLA Development Division where Darshan Pandya became his direct supervisor. (*Id.* ⁋ 6.)

On October 2, 2017, Plaintiff emailed Michael Maul, the vice president of product engineering, and expressed interest in becoming an associate engineer, which is a position within the Product Development Division. (ECF No. 189-3 at 5 ¶ 12, 19–21.) While Plaintiff holds an associate degree, this position requires an engineering degree. (*Id.* ¶ 12.) Maul informed Plaintiff that he was not qualified for an associate engineer position because he lacked an engineering degree. (*Id.*)

On March 28, 2018, Plaintiff met with Markia Pressley, Defendant's employee relations and compliance Manager, and conveyed a complaint "that he was denied promotions into engineering roles while other employees without engineering degrees were promoted into engineering roles." (ECF No. 189-8 at 2 ¶ 2.) When Pressley asked Plaintiff "if he had ever actually applied for a promotion, [Plaintiff] stated that he had not." (*Id.*) Following their meeting, Pressley investigated and determined that "those employees without engineering degrees who [Plaintiff] believed were promoted to engineering positions either: (1) did not hold true engineering positions . . .; or (2) were in a different business group wherein engineering degrees were not an absolute prerequisite to qualify for a position with the word "engineering" in the job title." (*Id.*) Pressley also confirmed that Defendant did not promote employees in the Product Development Division who did not have an engineering degree into engineering positions. (*Id.*)

On April 4, 2018, Plaintiff sent the following e-mail to co-worker Christopher Holmes and copied thirteen (13) other individuals, an action which was deemed inappropriate by Defendant:

> Please stop being mad about the lab jobs and not being able to fix things.. Please stop spreading rumors and gossip hurting our team moral.. I understand your position and that you may be somewhat bitter… so I have attached a copy of the Engineering Technician Job that is currently open in our SLA team.. I implore you to please apply.. We need good qualified people to help us resolve the mysteries that you see in the lab, and I know with your prior electrical mechanical and computer repair background and accreditation you will really help us move forward in the right direction. So please instead of causing dissention.. be a part of the greater solution.. help us reach our goal as a team… join us.. I think you can still apply.. I think you mentioned to me in the past that you already have the Electronics Degree and some other qualifications… so with your help we all win!!!

(ECF No. 189-5 at 16.)  In response to the e-mail, Pandya verbally counseled Plaintiff on April 5, 2018.  (ECF No. 189-5 at 7 ¶ 15.)  After Human Resources investigated the circumstances surrounding Plaintiff's email to Holmes, Defendant determined that Plaintiff should receive a Performance Written Warning Memorandum (the "Written Warning") for his misconduct.  (*Id.* at 7–8 ¶ 16, 25–26; *see also* ECF No. 189-8 at 3 ¶ 3.)

On April 13, 2018, Plaintiff met with Pandya to discuss the Holmes email.  (ECF Nos. 1 at 5; 189-5 at 8–9 ¶¶ 17–20.)  Plaintiff requested to have a Human Resources representative present during the meeting.  (ECF No. 1 at 5 ¶ e.)  However, the meeting began without any Human Resources representative and ultimately escalated into an alleged physical altercation between Plaintiff and Pandya because, in Plaintiff's view, Pandya misread and misinterpreted the email (due to Pandya's Indian background and cultural differences between Pandya and Plaintiff) "causing [Plaintiff] to be written up."  (*Id.*)  When Pandya asked Plaintiff to sign the Written Warning, Plaintiff refused and attempted to take a photograph of the document to send to Human Resources, but before Plaintiff could take the photograph, "Pandya ran around the table behind [Plaintiff] and assaulted [Plaintiff] and pulled both his arms back behind his back trying to wrestle with [Plaintiff]" causing him injuries.  (*Id.* ¶ f.)

After his meeting with Pandya, Plaintiff went to the Pressley's office and complained that:

the Written Warning was "unfair," despite the fact that he finally acknowledged that his email to Mr. Holmes "wasn't a nice email." Mr. Adams also alleged that the issuance of the Written Warning was discriminatory and retaliatory. After expressing his frustration regarding the Written Warning, Mr. Adams described the meeting with Mr. Pandya, claiming that, when he tried to take a photograph of the Written Warning, Mr. Pandya "grabbed him from behind" and took the document out of his hands. Mr. Adams did not allege that Mr. Pandya had caused him any physical pain, or that he was experiencing any physical symptoms as a result of the alleged altercation. While explaining his version of the purported events, Mr. Adams "demonstrated" Mr. Pandya's purported behavior on me. Specifically, he did so in a manner that caused me unnecessary pain and which was wholly inappropriate. At that point, I went and asked Sally Branham, 3D Systems' then-Director and Human Resources Business Partner, to join us for the discussion which she did. Mr. Adams then repeated his description of the meeting with Mr. Pandya and also "demonstrated" Mr. Pandya's purported behavior on Ms. Branham.

(ECF No. 189-8 at 4 ⁋ 6.)

On April 16, 2018, Defendant terminated Plaintiff as a result of his "insubordination toward Darshan Pandya during the April 13, 2018 meeting; recording that meeting without [] Pandya's knowledge or consent; inappropriate physical contact with [] Pressley and [] Branham; and chronic inability to get along with others in the workplace." (ECF No. 189-2 at 3 ⁋ 5.)

As a result of his experiences, Plaintiff filed four (4) separate Charges of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"): (1) a Charge[1] filed on June 29, 2015 (ECF No. 14-2 at 2), (2) a Charge[2] filed on April 10, 2018 (ECF No. 14-3 at 2), (3) a Charge[3] filed on April 20, 2018 (ECF No. 1-4 at 12), and (4) a Charge[4] filed on June 4, 2018 (*id.* at 28) (collectively the "Charges"). After receiving right to sue letters (dated December 7, 2018) for his April 20, 2018 and June 4, 2018 Charges of Discrimination (ECF

---

[1] Plaintiff alleged that he was discriminated against because of his race. (ECF No. 14-2 at 2.)
[2] Plaintiff alleged that he was discriminated against because of his race and age. (ECF No. 14-3 at 2.)
[3] Plaintiff alleged that he was discriminated against because of his age, race, and suffered retaliation. (ECF No. 14-4 at 2.)
[4] Plaintiff alleged that he was discriminated against because of his age, race, national origin, and suffered retaliation. (ECF No. 1-4 at 28.)

No. 1-3 at 1, 4), Plaintiff filed an action pro se in this court on March 6, 2019.  (ECF No. 1.)  He alleged claims under Title VII (retaliation, harassment, and discrimination), the ADEA (age discrimination), and state common law (assault, negligent supervision, wrongful termination).  (*Id.*)

On June 4, 2019, Defendant filed a Motion (ECF No. 14) seeking to dismiss Plaintiff's claims for color, national origin, and age discrimination, and his state law claims for negligent supervision and wrongful termination, and it also answered the Complaint, denying its allegations.  (ECF No. 15.)   On September 24, 2019, Defendant moved to amend its answer and add counterclaims.  (ECF No. 58.)   On November 26, 2019, the Magistrate Judge filed (1) a Report and Recommendation recommending that the court dismiss Plaintiff's claims for color, national origin, and age discrimination (ECF No. 68 at 22), and (2) an Order granting Defendant's Motion to Amend (ECF No. 69 at 5).   In its Amended Answer filed later on that day, Defendant alleged counterclaims against Plaintiff for violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, the South Carolina Trade Secrets Act, S.C. Code Ann. §§ 39-8-10 to -130 (West 2021), and for breach of contract.  (ECF No. 70 at 28 ¶¶ 119–33 ¶ 150.)  After considering Plaintiff's Objections to the November 26, 2019 Report and Recommendation, the court entered an Order on March 31, 2020, granting Defendant's Motion to Dismiss Plaintiff's "Title VII claims for color and national origin discrimination, his age discrimination claims, and his state law claims of negligent supervision and wrongful termination."  (ECF No. 122 at 7.)

On January 15, 2021, Defendant filed a Motion for Summary Judgment.  (ECF No. 189.)  On January 19, 2021, the court issued a Roseboro Order to Plaintiff, granting Plaintiff until February 19, 2021, to respond to Defendant's Motion for Summary Judgment.  (ECF No. 190.)  Also, on February 19, 2021, Plaintiff filed his own Motion for Summary Judgment.  (ECF No.

192.)   The parties then respectively exchanged Responses in Opposition to the Motions for Summary Judgment (*see* ECF Nos. 203, 213), and Reply Memorandums in Support of Summary Judgment.  (ECF Nos. 221, 225.)  In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge issued her Report and Recommendation on June 24, 2021, recommending that Defendant's Motion for Summary Judgment be granted as to all of Plaintiff's remaining claims, Plaintiff's Motion for Summary Judgment be denied, and Defendant's counterclaims be left for trial.  (ECF No. 240 at 43.)  On July 27, 2021, Plaintiff filed Objections to the Report and Recommendation.  (ECF No. 246.)  On August 10, 2021, Defendant filed a Reply to Plaintiff's Objections to the Report and Recommendation (ECF No. 247).

The court considers the merits of Plaintiff's Objections to the Report and Recommendation below.

## II.     JURISDICTION

This court has jurisdiction over Plaintiff's claims alleging violations of Title VII via 28 U.S.C. § 1331, as the claims arise under the laws of the United States.  Moreover, district courts are expressly empowered to hear claims brought under Title VII.  *See* 42 U.S.C. §§ 2000e–5(f)(3), 12117, 29 U.S.C. § 633(c).  The court may properly hear Plaintiff's state law claim for assault based on supplemental jurisdiction since this claim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).  *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (finding supplemental jurisdiction allows parties to append state law claims over which federal courts would otherwise lack jurisdiction to federal claims, so long as "[t]he state and federal claims ... derive from a common nucleus of operative fact"); *De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1152 (D.N.M. 2015) ("The court can then exercise supplemental jurisdiction over other

claims and parties that 'form part of the same case or controversy under Article III . . . .'" (citing 28 U.S.C. § 1367, *United Mine Workers*, 383 U.S. at 725)).

### III.     LEGAL STANDARD

A.     The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

B.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.

*Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV.    ANALYSIS

### A.    The Report and Recommendation

Upon her review, the Magistrate Judge first concluded that Plaintiff cannot establish a prima facie case for failure to promote under Title VII because he did not provide any evidence of either "particular position openings for which he applied (or even actual open positions)," or "that he was qualified for any of the positions or duties at issue." (ECF No. 240 at 21.) The Magistrate Judge further opined that Plaintiff failed to "set out appropriate comparators and cannot establish an inference of discrimination in that way." (*Id.* at 25.) Next, the Magistrate Judge observed that Plaintiff's race discrimination claims fail because (1) "Plaintiff was not satisfying 3D Systems' legitimate performance expectations at the time of his termination" and (2) "the circumstances surrounding the termination do not give rise to an inference of unlawful discrimination." (*Id.* at 28 (citations omitted).)

As to Plaintiff's claim for race-based hostile work environment or harassment, the Magistrate Judge determined that even after considering Plaintiff's allegations regarding his interactions with co-worker David Holland, the evidence does not establish that "any harassment

directed toward him because of his race would be considered [objectively] 'severe or pervasive.'" (*Id.* at 35–36.) To this point, the Magistrate Judge stated that "[e]ven if the alleged "harassment" was race-related, it would not constitute a hostile work environment because there is no genuine dispute that it was not frequent, severe, physically threatening, or disruptive of Plaintiff's ability to work." (*Id.* at 36.)

The Magistrate Judge further observed that although Plaintiff can demonstrate a prima facie case of retaliation, his claim ultimately fails because of the lack of pretext "evidence from which a reasonable factfinder could conclude that he was terminated for an impermissible reason." (*Id.* at 41.)

Finally, the Magistrate Judge found that Defendant was entitled to summary judgment on Plaintiff's state law assault claim because it is barred by the exclusivity clause of the South Carolina Workers' Compensation Act (the "Act"), S.C. Code §§ 42-1-10 to -19-50 (West 2021). (ECF No. 240 at 43 (citing, *e.g.*, *Ellis v. Harrelson Nissan of S.C.*, LLC, No. CV 0:15-3322-MBS-KDW, 2016 WL 1084292, at *2 (D.S.C. Mar. 21, 2016) ("[T]he exclusivity provision dictates that claims of assault by one employee against another must be resolved under the Workers' Compensation Act.")).)

As a result of the foregoing, the Magistrate Judge recommended that the court grant Defendant's Motion for Summary Judgment (ECF No. 189), deny Plaintiff's Motion for Summary Judgment (ECF No. 192), and allow the matter to proceed to trial on Defendant's counterclaims (ECF No. 70 at 28 ¶ 119–33 ¶ 150). (ECF No. 240 at 43.)

B.     The Court's Review

In light of the foregoing analysis by the Magistrate Judge, the court considers Plaintiff's

specific objections relevant to each of his claims below.[5]

## 1. Race Discrimination under Title VII

Plaintiff alleges that he was discriminated against when Defendant failed to promote him because of his race in violation of Title VII. More specifically, "Plaintiff contends that he tried on multiple occasions to apply for a job as a[n] Engineer I, Process Engineer, and a Failure Analysis Engineer . . . ." (ECF No. 213 at 27.)

### a. Legal Standard

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish a claim of discrimination under Title VII by directly showing that discrimination motivated an employment decision, or as is more common, by relying on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Pursuant to this burden-shifting framework, the plaintiff first establishes a prima facie case of discrimination. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). Without direct evidence of discriminatory motive, to prove a prima facie case of failure to promote, the plaintiff must prove by a preponderance of the evidence that: (1) he is within the protected class; (2) he applied for the vacant position in question; (3) he was qualified for that position; and (4) he was rejected under circumstances that give rise to an inference of discrimination." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996). "The employer may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after

---

[5] Plaintiff submitted extensive objections to the Report and Recommendation literally assessing each paragraph of the Report and providing specified points of disagreement. (*See* ECF No. 246.)

which the burden shifts back to the plaintiff to show that those reasons are pretextual." *Hammett v. S.C. Dep't of Health & Envtl. Control*, C/A No. 3:10-932-MBS-SVH, 2013 WL 1316440, at *5 (D.S.C. Jan. 25, 2013) (citing *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005)). *See also Wilson v. Genesis Healthcare, Inc.*, C/A No. 4:17-cv-3318-RBH-TER, 2019 WL 3208842, at *5 (D.S.C. July 1, 2019) ("Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is 'discrimination vel non.' In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination or retaliation." (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000))).

### b. Plaintiff's Objections

As to his failure to promote claim, Plaintiff asserts that "there was no application process that was adhered to" by Defendant and "none of his training or accomplishments were enough because he is Black and 3D Systems does not promote or hire African American Engineers." (ECF No. 246 at 20.)

Plaintiff further disagrees with the Magistrate Judge's statement that Plaintiff failed to identify an appropriate comparator. (*Id.* at 5–7.) Specifically, Plaintiff asserts that "Clinton Vilim is a 'comparator'" and he "did not have a 4[-]year degree but was white and allowed like all the others presented by the plaintiff to work with 'Engineer' Titles and not be required to have the same education background or work history." (*Id.* at 5, 7.) In addition, he asserts that all of the individuals identified by the Magistrate Judge were in fact "appropriate comparators because the plaintiff worked across platforms and had to work to help all the listed people and watch them be promoted higher than the plaintiff and use the plaintiff as a stepping stool." (*Id.* at 28.)

### c. Discussion

Upon its consideration of the foregoing, the court agrees with the Magistrate Judge that Plaintiff cannot establish a prima facie case of discriminatory failure to promote because the evidence of record does not demonstrate that there was a vacant position that he was qualified for, he applied for, and was rejected under circumstances that give rise to an inference of discrimination based on race. To this point, the Magistrate Judge specified that the uncontroverted evidence demonstrates that from June 2017 through April 2018, "there never was an opening for a Failure Analysis Engineer, Associate Engineer, or Entry Level Engineer position." (ECF No. 240 at 18 (citing ECF Nos. 189-3 at 5 ¶ 11, 189-4 at 3 ¶ 6).) Accordingly, the court finds that Defendant is entitled to summary judgment on Plaintiff's claims for race discrimination under Title VII.

### 2. *Retaliation under Title VII*

Plaintiff alleges that he was retaliated against for filing a complaint with the EEOC on April 10, 2018 (*see generally* ECF No. 4 at 4) and because he would not sign the Written Warning issued by Pandya on April 13, 2018. (ECF No. 246 at 37.)

### a. Legal Standard

Title VII protects individuals from retaliation. *See* 42 U.S.C. § 2000e-3(a). More specifically, "Title VII proscribes discrimination against an employee because, in relevant part, she 'has opposed any practice made an unlawful employment practice by this subchapter, . . . .'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)). Generally, to establish a prima facie case of retaliation under Title VII when direct evidence is unavailable, a plaintiff must show (1) that she engaged in protected activity;[6] (2) that

---

[6] "In the context of element one of a retaliation claim, an employee is protected when she opposes 'not only . . . employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful.'" *Boyer-Liberto*, 786 F.3d at 282 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005)).

her employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action. *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997). If the plaintiff establishes a prima facie case of retaliation, the defendant can rebut the presumption of retaliation by articulating a non-discriminatory reason for its action. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001) (citation omitted). At that point, the plaintiff has the opportunity to prove that the employer's legitimate, non-discriminatory reason is pretextual. *Id.*

### b. Plaintiff's Objections

Plaintiff objects to the Report arguing that he was told in March of 2018 that his formal complaint would be submitted to Defendant. (ECF No. 246 at 38.) He further argues that "notice of the charges [of discrimination] were sent to the HR department at 3D Systems by fax on the day they were accepted at the EEOC" and "the EEOC informed the plaintiff that the affidavit was sent at the time" he filed it. (*Id.* at 40.) Moreover, as to the reasons Defendant gave for his termination, "Plaintiff contends that he did not have inappropriate contact with Presley and Branham and had no problems getting along with coworkers and was very much liked throughout the company." (*Id.* at 38.) As for pretext, Plaintiff asserts that "retaliation, racism and the desire to get the Versa II without giving the plaintiff his credit were all the reasons for the termination." (*Id.* at 40.)

### c. Discussion

Upon its review, the court first finds that Plaintiff cannot demonstrate a prima facie case of retaliation regarding the April 10, 2018 Charge of Discrimination because there is no causal link between the protected activity and the alleged retaliatory termination he suffered. "[A] causal connection for purposes of demonstrating a prima facie case [of retaliation] exists where the employer takes adverse employment action against an employee shortly after <u>learning</u> of the

protected activity." *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)) (emphasis added). "'Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.'" *Wright v. Sw. Airlines*, 319 F. App'x 232, 234 (4th Cir. 2009) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

Upon consideration of the evidence of record, the court is unable to impute either direct or circumstantial knowledge of Plaintiff's August 10, 2018 Charge of Discrimination to Defendant at the time the decision was made to terminate Plaintiff. Specifically, despite Plaintiff's assertions that Defendant had notice of the Charge prior to his April 16, 2018 termination, the date on the notice that the EEOC sent to Defendant is April 19, 2018. (*See* ECF No. 189-8 at 8.) Because Plaintiff cannot allege facts sufficient to create an inference that the individuals responsible for his termination had knowledge of his protected activity, he is unable to satisfy the causality element of a prima facie retaliation claim. *See Wright*, 319 F. App'x at 234 ("Although it appears accurate that certain airline officials were aware of [Plaintiff-Appellant] Wright's FMLA request, she utterly fails to demonstrate that the particular supervisors involved in her termination possessed such knowledge . . . . As Wright failed to allege facts sufficient to prove that the supervisors responsible for her termination had knowledge of her FMLA request, she was unable to establish a prima facie retaliation claim, . . . .").

The court next observes that after consideration of the Written Warning (*see* ECF No. 189-5 at 25–26), it is not persuaded that Defendant's act of asking Plaintiff to sign the Written Warning

satisfies the adverse employment action element of a prima facie case of retaliation.[7]  "The presence of adverse employment action is 'an absolute precondition' to an employment discrimination suit."  *Batten v. Grand Strand Dermatology, LLC*, C/A No. 4:18-cv-0616-MGL-TER, 2019 WL 9667692, at *6 (D.S.C. Dec. 20, 2019) (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)).  "An adverse employment action is an action 'that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Jensen-Graf v. Chesapeake Emp'rs' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011)).  "[T]here is no exhaustive list of what constitutes an adverse employment action."  *Little v. Nat'l Broad. Co., Inc.*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002).  "Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions."  *Id.*  "While a plaintiff must show the existence of an adverse employment action to show a prima facie case of employment discrimination, this requirement 'is derived from the statute's requirement that the employer's practice relate to 'compensation, terms, conditions or privileges of employment' or that the practice 'deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee.'"  *Jensen-Graf*, 616 F. App'x at 597–98 (quoting *Ali v. Alamo Rent–*

---

[7] The court also adopts the Magistrate Judge's conclusion that "Defendant's action in the unemployment proceeding ought not be considered an adverse action."  (ECF No. 240 at 38 (citing *Mitchell v. N.C. Div. of Emp't Sec.*, 76 F. Supp. 3d 620, 625 (E.D.N.C. 2014), aff'd, 599 F. App'x 517 (4th Cir. 2015) (dismissing pro se plaintiff's Title VII retaliation claim because his former employer's participation in his unemployment case did not constitute a materially adverse action)).)

*A–Car, Inc.*, 8 F. App'x 156, 158 (4th Cir. 2001). To qualify as an adverse employment action, the harm alleged must "work a 'significant' detriment" on a plaintiff. *Adams v. Ann Arundel Cty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015).

Therefore, as a result of the foregoing, the court finds that Defendant is entitled to summary judgment on Plaintiff's claim for retaliation.

### 3.  *Harassment under Title VII*

#### a.  **Legal Standard**

Title VII prohibits an employer from subjecting an employee to a hostile work environment. *See* 42 U.S.C. § 2000e-2(a)(1)[8]; *see also Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001). A plaintiff can establish a hostile work environment claim under Title VII either by directly showing that discrimination motivated an employment decision, or, as is more common, by relying on the indirect, *McDonnell Douglas* burden-shifting method. *Kasznski v. Thompson*, 83 F. App'x 526, 527–28 (4th Cir. 2003). Pursuant to the burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for its employment action. *Id.* If the defendant meets the burden to demonstrate a legitimate, non-discriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *See Reeves v.*

---

[8] "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . ." 42 U.S.C. § 2000e-2(a)(1).

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

To state a prima facie Title VII claim for a hostile work environment based on race, the plaintiff must demonstrate that: "(1) []he experienced unwelcome harassment; (2) the harassment was based on h[is] . . . race []; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998)). A work environment is hostile when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted).

To meet the causation element, a plaintiff must show that "but for" the protected characteristic, he would not have been a victim of harassment. *See Causey*, 162 F.3d at 801. The "severe or pervasive" third element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003). First, a plaintiff must show that he "subjectively perceive[d] the environment to be abusive." *Harris*, 510 U.S. at 21–22 (1993). Second, a plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive.[9] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998).

---

[9] When determining whether the conduct was objectively "severe or pervasive" courts look at the totality of the circumstances, which includes considering the frequency and severity of the conduct, as well as whether it unreasonably interferes with the work performance, is humiliating, or physically threatening. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). In order for allegedly harassing conduct to be actionable, it "must be so extreme as to amount to a change in the terms and conditions of employment." *Id.* (Internal quotation and citation omitted). Isolated incidents that are not extremely serious and offhand comments do not meet this standard. *Id.* The court's task on summary judgment is to find "instances where the environment was pervaded with

### b.  Plaintiff's Objections

In his objections, Plaintiff supports his hostile/harassing work environment claim by identifying the following conduct that he experienced:

(1) the assault by Pandya and his criticisms resulting from the view "that the plaintiff was always wrong;

(2) "the incident where David Holland harassed the plaintiff from the parking lot inside the building and knocking off his stuff on his desk;

(3) "[t]he incident where [D]avid Holland searched the plaintiff[']s briefcase for leads for an oscilloscope and accused the plaintiff of stealing";

(4) "Holland also stated that things didn't come up missing until the plaintiff began to work in the department"; and

(5) "[D]uring the protest in Charlotte[,] NC[,] David Holland became so upset with the Plaintiff for participating that he refused to give the plaintiff any assignment for over [] a month[']s time."

(ECF No. 246 at 34–35.)   "Plaintiff [further] contends that because he is Black[,] there was constant scrutiny regarding his job performance and constant debate on whether he knew what he was doing."  (*Id.*)

### c.  Discussion

The court observes that the merit of Plaintiff's cause of action for hostile work environment based on race is dependent on the sufficiency of the foregoing evidence to support his demonstration of the "severe or pervasive" third element of a prima facie case.  Upon its review, the court does not have any doubt that Plaintiff subjectively perceived his environment to be hostile and abusive.  However, the court is required to go a step further and also must find that this evidence was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive.  *Oncale*, 523 U.S. at 81–82.  After considering all of the above allegations and the totality of the circumstances as demonstrated by the evidence presented by Plaintiff, the court cannot conclude that Plaintiff has met his burden of establishing

---

discriminatory conduct aimed to humiliate, ridicule, or intimidate," thereby creating an abusive atmosphere.  *Id*.

that the alleged treatment he received was objectively severe and pervasive to alter the conditions of employment and create an abusive atmosphere. *See, e.g.*, *Venton v. Million Dollar Round Table*, No. 13-CV-7725, 2015 WL 3777543, at *4 (N.D. Ill. June 16, 2015) (while comments relating to the plaintiff's hair, including: "what do black people use in their hair," "is your hair kinky," "what is the grade of your hair," and "do black people need to wash their hair every week," arguably had a racial component, but "without the traditional hallmarks of impermissible racial harassment such as slurs, epithets, or overt racial animus or intimidation do not necessarily amount to discrimination . . . . Here, the incidents were not pervasive, occurring over a span of years, which dilutes their offensive effect and diminishes their severity.") (internal citation omitted).

"[P]laintiffs must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. [I]ncidents that would objectively give rise to bruised or wounded feelings [like the ones described by Plaintiff] will not on that account satisfy the severe or pervasive standard." *Id.* Specifically, claims based on "rude treatment by [coworkers] . . . callous behavior by [one's] superiors, . . . or a routine difference of opinion and personality conflict with [one's] supervisor are not actionable under Title VII." *Id.* (internal quotations and citations omitted). In this regard, the court finds that Plaintiff has not presented sufficient evidence to raise a genuine issue of fact as to whether he was subjected to an objectively hostile work environment based on his race in violation of Title VII.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claim for hostile work environment based on his race is granted.

### 4.  *Common Law Assault*

In his claim for assault,[10] Plaintiff seeks to recover damages for medical expenses and pain

---

[10] "An 'assault' is an attempt or offer, with force or violence, to inflict bodily harm on another or engage in some offensive conduct." *Mellen v. Lane*, 659 S.E.2d 236, 244 (S.C. Ct. App. 2008)

and suffering caused by Pandya, who allegedly assaulted Plaintiff during their April 13, 2018 meeting. Plaintiff claims that Pandya pulled both his arms back behind his back causing them to hyperextend. (*See* ECF No. 1 at 5, 16; 189-10 at 16:19–17:10.)

### a. Legal Standard

"The South Carolina Workers' Compensation Act contains an exclusivity provision which 'precludes an employee from maintaining a tort action against an employer where the employee sustains a work-related injury.'" *Todd v. Fed. Express Corp.*, C/A No. 4:09-1501-TLW-TER, 2010 WL 1294070, at *1 (D.S.C. Mar. 29, 2010) (quoting *Edens v. Bellini*, 597 S.E.2d 863, 867–68 (S.C. Ct. App. 2004)). "[C]laims for 'assault and battery caused by the action of another employee are within the scope of the [Worker's Compensation] Act since these actions arise from personal injury.'" *Id.* (quoting *Dickert v. Metro. Life Ins. Co.*, 428 S.E.2d 700, 701 (S.C. 1993)). If an assault occurred as alleged by Plaintiff, such act would be "plainly preempted by the South Carolina Worker's Compensation Act because [Plaintiff] allege[s] personal injury, suffered at the hands of a co-employee, arising out of and in the course of h[is] employment." *Whicker v. Sci. Applications Int'l. Corp.*, C/A No. 2:11-3193-SB-BHH, 2012 WL 4983864, at *2 (D.S.C. Sept. 20, 2012) (citing *Dickert*). "[T]he only exceptions to the Act's exclusivity provisions are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations." *Id.* at *3 (citing *Cason v. Duke Energy Corp.*,

---

(citing *In re McGee*, 299 S.E.2d 334, 334 (S.C. 1983); *Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748, 754–755 (S.C. Ct. App. 1984) ("[A]n assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant.")). "The elements of assault are: (1) conduct of the defendant which places the plaintiff, (2) in reasonable fear of bodily harm." *Id.* (citations omitted).

560 S.E.2d 891, 893 (S.C. 2002)).

### b.  Plaintiff's Objections

In his objections to the Magistrate Judge's recommendation regarding the assault claim, Plaintiff focuses his arguments on trying to convince the court that the assault did occur.  (*See*, *e.g.*, ECF No. 246 at 41 ("Plaintiff contends that the story is true and he was assaulted.  . . . the court will see there are many inconsistencies and that there was an assault.").)  However, what Plaintiff fails to understand is that for purposes of its analysis of this claim, the court assumes the veracity of the assault.

### c.  Discussion

Upon its review, the court observes that the evidence of record does not establish any of the exceptions to the Act's exclusivity provision.  At most, Plaintiff asserts that Pandya was "a supervisor of the plaintiff and was an officer of the employer."  (ECF No. 246 at 41.)  As a result, the court agrees with the Magistrate Judge that Defendant is entitled to summary judgment on Plaintiff's claim for assault based on the Act's exclusivity provision.

## V.    CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the Motion for Summary Judgment of Defendant 3D Systems, Inc., (ECF No. 189), **OVERRULES** Plaintiff Joe L. Adams, Jr's Objections (ECF No. 246), and **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 192).  The court will conduct a jury trial on Defendant's claims for breach of contract, and violation of the Defend Trade Secrets Act and the South Carolina Trade Secrets Act.

The court further **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 240) and incorporates it herein by reference.

**IT IS SO ORDERED.**

United States District Judge

September 30, 2020
Columbia, South Carolina